IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HSI, INC., | : | Civil No. 4:19-CV-352 |
| Plaintiff | : | |
| v. | : | (Magistrate Judge Carlson) |
| 48 STATES TRANSPORT, LLC, et al., | : | |
| Defendants | : | |

## MEMORANDUM ORDER

### I. Statement of Facts and of the Case

This vehicular accident case comes before us for resolution of a discovery dispute and motion to compel filed by the defendant, 48 States, which seeks disclosure of the plaintiff's income tax returns. (Doc. 35).[1] Specifically, 48 States seeks disclosure of tax returns for the plaintiff, HSI, for the past 10 years. (Id. ¶ 6).

48 States makes this discovery demand of HSI in the context of a lawsuit in which HSI alleges that it purchased a 2015 Freightliner truck as part of its business in March of 2018, paying $102,508.94 for this vehicle. (Doc. 1 ¶ 6). According to HSI, on May 4, 2018, this truck was extensively damaged in an accident due to the

---

[1] In this motion to compel, 48 States also seeks copies of relevant insurance policies relating to this dispute. We understand that HSI has agreed to provide these policies. Therefore, this aspect of the motion to compel now seems to be moot. In any event, we agree that the relevant insurance policies are plainly discoverable.

1

negligence of a truck driver employed by 48 States. (Id. ¶ 11-14). HSI alleges that this accident resulted in some $42,000 in damage to its vehicle, and an additional lost revenue of $445,500 for the period from May 2018 through February 2019 when this vehicle was out of commission. (Id. ¶ 19). Thus, the primary component of HSI's alleged losses in this case consists of lost income totaling more than $445,000 in 2018 and 2019.

With HSI's claims framed in this fashion, 48 States seeks tax return information from the plaintiff, a request which HSI has resisted, inspiring this motion to compel. The parties have set forth their respective positions on this issue. Therefore, this dispute is now ripe for resolution. Upon consideration of the parties' submissions, for the reasons set forth below, this motion will be granted in part and denied in part.

**II.   Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is

defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Likewise, discovery sanction decisions rest in the sound discretion of the court. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009). This far-reaching discretion extends to rulings by United

States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

In this case, 48 States seeks the disclosure of 10 years' worth of tax returns from HSI based upon the plaintiff's allegations that a May 2018 vehicular accident caused it to suffer income losses totaling $445,000 in 2018 and 2019. In considering this discovery request, we begin by noting that:

> The legal standards which govern disclosure of tax return information impose a twofold obligation on . . . parties. Thus, the question of " '[w]hether tax returns are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.' (Doc. No. 86 at 6 (quoting Jackson v. Unisys, Inc., No. 08–3298, 2010 WL 10018, at *2 (E.D. Pa. Jan. 4, 2010)).)" Delhagen v. McDowell, No. 3:08 CV 00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010).

4

Sinclair Cattle Co. Inc. v. Ward, No. 1:14-CV-1144, 2015 WL 6167488, at *2 (M.D. Pa. Oct. 20, 2015). This two-part test for determining whether tax returns are subject to disclosure is also subject to shifting burdens of proof and persuasion. "First, the party seeking discovery bears the burden of demonstrating relevance. If relevant, the tax returns will be discoverable unless the party resisting discovery meets its burden of proving there is no compelling need for the tax returns because the information available in the tax returns can be obtained from other sources." Fort Washington Res., Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994).

Applying these legal benchmarks, we note that the moving party, 48 States, has made an initial showing of relevance in this case, albeit a showing of relevance which is narrower in its temporal scope than the defendant's current demand for HSI's tax returns spanning the past decade. Specifically, given HSI's allegations that it suffered a loss of $445,500 in income between May 2018 and February 2019 while this vehicle was out of commission, its tax returns which reflect the company's earnings and income are relevant and subject to discovery. However, while we believe that some tax returns may be discoverable, we do not believe that this showing of relevance entitles 48 States to 10 years of tax returns since returns from 2010 tell us little about lost income in 2018 and 2019. Instead, in terms of our threshold relevance determination, we will limit the temporal scope of this request to HSI's tax returns from 2015 forward. This disclosure embraces the two years in

which HSI alleges it lost income, 2018 and 2019, as well as the three preceding tax years, 2015, 2016, and 2017, which provide a useful benchmark for gauging whether HSI experienced and reported a significant decline in its income during 2018 and 2019.

Having found that 48 States has carried its initial burden of proving the relevance of some of these tax returns, we turn to the second issue we must address: whether "the party resisting discovery meets its burden of proving there is no compelling need for the tax returns because the information available in the tax returns can be obtained from other sources." Fort Washington Res., Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994). In this case we find that HSI has not met this burden since HSI's rejoinder on this issue consists of little more than a declaration that it will, in due course, produce an expert report detailing its lost income, coupled with an assertion that tax returns are an imprecise measure of the losses it actually suffered as a result of this accident. While HSI should, of course, feel free to retain an expert to document its income losses, in defending this case 48 States is not limited to acceptance of the plaintiff's expert's analysis. Quite the contrary, 48 States is entitled to challenge these income loss claims, and towards that end may receive and review relevant tax returns filed by the plaintiff which reveal the reported income and earning of HSI during the period when it alleges that it suffered more than $445,000 in lost revenues. Since HSI's proffer falls short of showing that there

is no compelling need for these tax returns and does not persuasively demonstrate that the information available in the tax returns can be obtained from another source, HSI has not carried its burden of proof on this issue which would justify denying some narrowly tailored tax return disclosure. Therefore, we will order disclosure of those returns which are relevant to the lost income issues framed by HSI's complaint.

An appropriate order follows.

### III. Order

AND NOW, this 2nd day of January 2020, pursuant to Rule 37 of the Federal Rules of Civil Procedure and in accordance with the foregoing Memorandum, IT IS ORDERED that the Defendant's Motion to Compel, (Doc. 35), is GRANTED in part as follows: HSI is ORDERED to disclose its tax returns from 2015, 2016, 2017, 2018, and 2019 to the defense.

*S/Martin C. Carlson*  
Martin C. Carlson  
United States Magistrate Judge